

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. James E. Kilday, Director
Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

> Opinion No. O-1207
> Re: Is the described operation of a
> truck under the jurisdiction of
> the Railroad Commission?

We are in receipt of your letter of July 31,
1939, in which you call our attention to the following
situation and request our opinion upon a question in
respect thereto:

> "Certain business houses, located in small
> towns, hereinafter indicated, propose to pool
> some money and buy a truck and then hire a driv-
> er to operate the same carrying commodities gen-
> erally for the purchasers and owners of the
> truck,—the driver to receive a regular monthly
> salary,—the other expenses involved in operat-
> ing the truck to be prorated on a basis of ton-
> nage handled. * * *
>
> "* * *
>
> "As I understand our records we have here-
> tofore authorized a common carrier truck service
> into and out of these points but that service
> has ceased. Of course, we should and will set
> this authorized operator down for cancellation
> based on failure to operate.
>
> "There is no rail or truck service into
> or out of said points,—they are inland points.
>
> "The proposal is to run this jointly own-
> ed truck back and forth to and from Houston.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Is this operation subject to the jurisdiction of the Railroad Commission of Texas?

" * * *

"Is the new proposals and operation one which, in order to be valid, would require a certificate of public convenience and necessity or is it one over which the Commission is without jurisdiction?"

Article 911b of Vernon's Annotated Civil Statutes establishes the jurisdiction of the Railroad Commission of Texas over motor carriers operating as common carriers (motor carriers for hire) and motor carriers operating as contract carriers. In this connection we deem it sufficient only to quote Section 4(a) of said Act which reads as follows:

"Sec. 4(a). The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State, to fix, prescribe or approve the maximum or minimum or maximum and minimum rates, fares and charges of each motor carrier in accordance with the specific provisions herein contained, to prescribe all rules and regulations necessary for the government of motor carriers, to prescribe rules and regulations for the safety of operations of each of such motor carriers, to require the filing of such monthly, annual and other reports and other data of motor carriers as the Commission may deem necessary, to prescribe the schedules and services of motor carriers operating as common carriers, and to supervise and regulate motor carriers in all matters affecting the relationship between such carriers and the shipping public whether herein specifically mentioned or not."

Section 3 of said article requires motor carriers operating as common carriers to obtain certificates of public convenience and necessity, and motor carriers

operating as contract carriers to obtain permits from the Railroad Commission. It provides:

"Certificate of convenience and necessity) Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act."

The answer to the question submitted depends upon whether or not the truck owned and operated by the business men and concerns named in your letter between their respective towns and Houston, Texas, is a motor carrier operating as a common carrier or as a contract carrier, within the definitions of Article 911b.

Section 1 of Article 911b contains definitions. Subdivision (g) of Section 1 defines the term "Motor Carrier" as:

"(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees appointed by any Court whatsoever, owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns."

Subdivision (h) states that the term "contract carrier" means:

"(h)  The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway of this State other than as common carrier."

It is evident that an essential prerequisite of the status of both the Motor carrier operating as a common carrier and a contract carrier, according to the above definitions, is the transportation of property of the public for compensation or hire. According to the facts submitted, certain business men and carriers engage in the joint venture of operating a truck on the basis of prorated expenses for the purpose of transporting their own property to Houston from their respective towns.  They are all owners of an interest in the truck together hire a driver, and are hauling their own property.  Under these facts they are not operating a truck either as a common carrier for hire or as a contract carrier within the purview of Article 911b.

We are assuming that the truck is transporting the property of its owners and that they are not holding themselves out as ready to engage in the transportation business, but are hauling goods for their own respective benefits.  The use of the word "generally" in your letter where you state that the truck is used for "carrying commodities generally for the purchasers and owners of the truck" (underscoring ours) necessitates our emphasizing this distinction.  See opinion O-1094 of this Department, copy attached.

It is our opinion that the Railroad Commission has no jurisdiction over a motor vehicle operated jointly by a group of business houses for the transportation of products and commodities of the owners on the public highways and not engaged in the transportation of property of the public for compensation or hire, and consequently the Railroad Commission cannot require a certificate of convenience and necessity therefor or a permit.

Trusting that the above fully answers your in-

Hon. James E. Kilday, Director, page 5

quiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

BY

Dick Stout
Assistant

APPROVED
OPINION
COMMITTEE
BY RWF
CHAIRMAN

IS:ob

Enol (O-1094)

APPROVED AUG 19, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

WCH.